**ROYAL TYPEWRITER CO. v. REMING-
TON RAND, Inc.**

No. 222, Docket 20895.

Circuit Court of Appeals, Second Circuit.

May 21, 1948.

William H. Davis, Davis, Hoxie & Faith-full, and George E. Faithfull, all of New York City, for plaintiff-appellee.

Edwin T. Bean, Bean, Brooks, Buckley & Bean and Conrad Christel, all of Buffalo, N. Y., and Rockwell & Bartholow, and Henry E. Rockwell, all of New Haven, Conn., for defendant-appellant.

Before L. HAND, SWAN and CLARK, Circuit Judges.

L. HAND, Circuit Judge.

Judge Smith's opinion in the district court has been published,[1] and states the disclosure in substance and the claims in full. We shall assume a familiarity with it in what we say and confine our discussion to the only issue in dispute—infringement. As a preliminary it is to be observed that the defendant concedes 'the claims in suit to be valid; a concession we shall accept, although the Supreme Court has said that, when the defendant challenges the validity of claims as well as their infringement, it is better practice to pass on their validity.[2] At first blush it might appear that the situation is the same when validity is conceded, because the reason why we should pass on that question, even though we can dispose of the suit otherwise, is so that invalid claims shall not remain in terrorem of the art. There is however this difficulty in so proceeding,

[1] D.C., 76 F.Supp. 220.
[2] Sinclair & Carroll Co. v. Interchemical Corp., 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644.

when the defendant concedes the validity of the claims. He then puts in no evidence, nor does he seek to defeat them on the patentee's own presentation; and the court has therefore no adequate means to decide the issue. A decision would ordinarily sustain the claims, and would give them only added currency. On the other hand, in those cases in which they were not sustained, the patentee would not have had a fair chance to support them.[3]

■ Coming then to the question of infringement, we are first to interpret the claims in the light of disclosure; and both the claims and the disclosure in the setting of the prior art. In these respects a patent is like any other legal instrument; but it is peculiar in this, that after all aids to interpretation have been exhausted, and the scope of the claims has been enlarged as far as the words can be stretched, on proper occasions courts make them cover more than their meaning will bear. If they applied the law with inexorable rigidity, they would never do this, but would remit the patentee to his remedy of re-issue, and that is exactly what they frequently do. Not always, however, for at times they resort to the "doctrine of equivalents" to temper unsparing logic and prevent an infringer from stealing the benefit of the invention. No doubt, this is, strictly speaking, an anomaly; but it is one which courts have frankly faced and accepted almost from the beginning.[4] All patents are entitled to its benefit to an extent, measured on the one hand by their contribution to the art, and on the other by the degree to which it is necessary to depart from the meaning to reach a just result.

■■ Although the defendant's "margin regulator" does not verbally correspond throughout with the claims in suit, we think that the plaintiff has established infringement through the mediation of this doctrine. The disparity to be answered is double: the defendant's "regulator" has not two "trip bars" but one; its keys are not "attached" directly to its single "trip bar," but by a train of connected members, ending at the keyboard. The accepted rubric is that to be an "equivalent" the infringement must attain "substantially the same result in substantially the same way"; and the defendant's single "trip bar" seems to us to fulfill both conditions. Indeed, as to result it is, not only "substantially," but literally, identical, for it trips both "oscillatory catches" by raising the detents from the rack, which is all that the two "trip bars" do in the disclosure. Furthermore, although it does not do this in precisely the same way, the methods are "substantially" alike. In the disclosure each "trip bar" descends when its key is pressed, and impinges upon the end of the "oscillatory catch" opposite to the detent; in the defendant's "regulator" the single bar operates upon bell-cranks, pivoted on the catch to which the detents are fastened. When the "trip bar" descends, it depresses one of the bell-cranks, which extends away from the detent; and in so doing it operates almost exactly as does one "trip bar" of the disclosure. When the "trip bar" ascends, it raises the other bell-crank which extends towards the detent; and raises it as well. This is the only departure in operation, which results from making a single "trip bar" do the service of two. In our judgment not only is it inconsequential, but the invention merits its allowance. True, Woodfine's was not a major achievement; but it did add a convenient novelty to the typewriter, a machine on which a vast amount of ingenuity had been expended, and which had for long offered a place for just such an improvement. Moreover, although the record amply proves that "margin stops" themselves had received much attention and been the sub-

---

3 Exhibit Supply Co. v. Ace Patents Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L. Ed. 736.

4 Winans v. Denmead, 15 How. 330, 343, 14 L.Ed. 717; Royer v. Schultz Belting Co., 135 U.S. 319, 325, 10 S.Ct. 833, 34 L.Ed. 214; Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 43, 50 S.Ct. 9, 74 L.Ed. 147; Claude Neon Lights v. E. Machlett & Son, 2 Cir., 36 F. 2d 574, 575; Directoplate Corp. v. Donaldson Lithographing Co., 6 Cir., 51 F.2d 199, 202; Oates v. Camp, 4 Cir., 83 F.2d 111, 116; Keith v. Charles E. Hires Co., 2 Cir., 116 F.2d 46, 48; Saco-Lowell Shops v. Reynolds, 4 Cir., 141 F.2d 587, 594; Musher Foundation v. Alba Trading Co., 2 Cir., 150 F.2d 885, 887; Crampton Manufacturing Co. v. Crampton, 6 Cir., 153 F.2d 543, 546.

ject of a number of patents, nobody had ever before worked out their automatic return; and that was a change which has proved of substantial service. We think this adequate testimony that, although its contrivance did not demand a high flight of inventive genius, it is entitled to be protected against so complete an appropriation as the defendant has made. Furthermore, although we are chary of all objective absolutes in the field of patents, reliance upon which has done more to conceal and confuse the subject than anything else, courts have with curious unanimity held that it does not avoid infringement to combine into one member that which the patent discloses as two, if the single member performs the duties of both in the same way. The decisions are so numerous that we confine ourselves to citing those which over the last thirty years we have passed ourselves.[5]

▮▮▮▮ Little need be said as to the second supposed departure: that the keys in the defendant's "regulator" are not "attached" to its "trip bar." Here it seems to us that we need not invoke the "doctrine of equivalents" at all. In Woodfine's "Figure 2" the "key bars," 53, do appear to be fixed to the "trip bars" by an unnumbered screw, so that operatively the two make a single member, although the text only says that they are "attached." However, merely as matter of interpretation of the instrument as a whole, there is no reason to circumscribe the word, "attached," in the claims to the very details of the disclosure and least of all to the details of the figures. In point of colloquial speech no such limitation is to be implied; we speak of two objects as "attached" to each other, though they are connected by a train of links or even by a chain. Even more than in the case of the "trip bar" the infringement is well within any but a deliberately hostile interpretation of the claims.

It is perhaps proper in conclusion to say a word about the case of Halliburton Oil Well Cementing Co. v. Walker,[6] for the defendant bears heavily upon it. It was directed against claims, not keyed to the disclosure, but drawn in terms of what the invention sought to accomplish: i. e. "functional claims." From the beginning courts have held that, since the claim is the measure of the monopoly, it must advise the public of its scope, and may not be stated in terms of ends or purposes, for that would extend the monopoly to all contrivances which would accomplish the same results, and these might owe nothing whatever to the patentee. Indeed, the same conclusion really follows from the form of the statute which limits patents to corporeal embodiments: an "art, machine, manufacture, or composition of matter."[7] It is true that a boundary cannot be drawn with precision; and the draftsman of claims is always in something of a dilemma—the dilemma which has led to the very "doctrine of equivalents" itself. He must pick out those elements of the manifold which together make up the invention, for so the statute requires: "he shall particularly point out and distinctly claim the part, improvement, or combination which he claims as his invention or discovery."[8] On the one hand, if he confines himself rigidly to those elements as they appear in the specifications, he deprives the patent of any practical value, because it is always, or almost always, possible to change the form of these as they appear, and yet cull the full advantage of the discovery. On the other hand, if he too much abandons the elements as they are disclosed, he will not "particularly point out * * * the part * * * or combination which he claims": i. e. he will have so far generalized the disclosure, that the combination of any elements which will effect the same result will be covered. The patent will then pro tanto stifle progress in the art and be invalid.

[5] Barber v. Otis Motor Sales Co., 2 Cir., 240 F. 723, 728; Line Material Co. v. Brady Electric Mfg. Co., 2 Cir., 7 F.2d 48, 50; Rockwood v. General Fire Extinguisher Co., 2 Cir., 8 F.2d 682, 688; Gibbs v. Triumph Trap Co., 2 Cir., 26 F. 2d 312, 314; Cincinnati Car Co. v. New York Rapid Transit Corp., 2 Cir., 35 F.

2d 679, 682; A. Colton Co. v. McKesson & Robbins, Inc., 2 Cir., 58 F.2d 157, 158; Hookless Fastener Co. v. G. E. Prentice Mfg. Co., 2 Cir., 75 F.2d 264, 267.
[6] 329 U.S. 1, 67 S.Ct. 6, 91 L.Ed. 3.
[7] § 31, Title 35 U.S.C.A.
[8] § 33, Title 35 U.S.C.A.

It is impossible in practice to emerge from this embarrassment without some measure of compromise; the elements as they appear in the claims must be clearly enough identified with elements as they appear in the manifold to be "substantially" limited by their 'description, verbal and pictorial. Yet the claims must be given enough scope to cover "substantially similar" variants. It is always a question of degree, and courts have differed, and always will differ, as to the allowable latitude in a given instance. Halliburton Oil Well Cementing Co. v. Walker, supra,[9] did indeed apply the rule against "functional claims" with some severity; but in the case at bar it seems to us that the mesne has been observed. The defendant does not assert that the claims in suit are void for indefiniteness or because the crucial elements were stated in language partly "functional"; but it does say that, being properly limited, the plaintiff should be held to the language that Woodfine chose, and may not escape the confines he accepted. That, however, is only to restate the antinomy inherent in the whole doctrine. It may be that it will disappear, but nothing so far satisfies us that as yet it has.

Judgment affirmed.