**RIC–WIL CO. v. E. B. KAISER CO.**

No. 10289.

United States Court of Appeals
Seventh Circuit.

Feb. 5, 1951.

Rehearing Denied March 1, 1951.

See, also, 95 F.Supp. 54.

George I. Haight, Edward A. Haight, Chicago, Ill., Robert R. Lockwood, Chicago, Ill., for appellant.

Harvey R. Hawgood, Arthur H. Van Horn, Cleveland, Ohio, Will Freeman, Norman Lettvin, Chicago, Ill., for appellee.

Before KERNER, DUFFY, and SWAIM, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from an order adjudging defendant guilty of contempt for violation of an injunction against infringement of claims 11, 14, 15, 16 and 17 of Gottwald Patent No. 1,991,455, and imposing a fine of $2,500 for the benefit of plaintiff as punishment for the contempt.

The patent, which has previously been held by this court to be valid and infringed (179 F.2d 401), relates to a conduit system for the transmission of steam and other liquids and was particularly designed for use in connection with a central heating system. We stated in our opinion that it "shows a steam pipe surrounded by a layer of insulation and having an outer covering or shell to protect the insulation, with an air space between the insulation and the shell. The combination is assembled in a factory, thus providing a unit construction with the ends of the pipe extending beyond

that of the insulation and shell to facilitate handling and joining the units together to make up a steam piping system. The claims in suit of this patent are directed to this unit and its use in the piping system."

We were convinced that the disclosure represented a marked advancement in the construction and insulation of a steam heating system, stressing the fact that for the first time it provided a unit which could be completed indoors, affording workers protection in all kinds of weather and thus increasing their efficiency, and insuring a better quality product capable of being transported complete, lowered into a trench substantially no larger than sufficient to receive it, coupled with other units quickly and accurately so that the joints could be tested and inspected immediately and the trench filled. As a further advantage of this "Unit-Type" of construction over the older "Tunnel-Type" we referred to the ease of removing and replacing sections in need of repair.

All of this was in accord with the file-wrapper history which showed that, in distinguishing certain references, the applicant's attorney stated that predecessors to the claims in suit "are directed to an article of manufacture, being a complete unit which may be sold 'over the counter' as such, and consisting of the conduit and its surrounding shell assembled with heat insulating material." And again "Applicant has devised a completed unit which, as disclosed in the specification, may be fabricated in a shop and needs only to be brought to the point of installation and then connected with similar units to produce a complete heat insulated and drained conduit system." Two other references were distinguished on the ground that neither "shows a single article of manufacture at all, but both show systems which must be built up in the field." And in rewriting his claims for submission in the form in which they were finally allowed, counsel again emphasized this point of prefabrication,

"the real essence of his invention is the provision of a unit which is a single fabricated article of manufacture. This can be manufactured, as contra-distinguished from being built, at any desired place, such as in a shop remote from installation. * * in every one [claim] in some manner, the fact that the complete unit of both pipe and insulating material is a single manufactured article, is brought out."

After the injunctional order was affirmed by this court, defendant modified its structures and, when plaintiff again charged infringement, notified it of the changes with drawings to explain them. Upon plaintiff's refusal to admit non-infringement by the alleged modified structures, defendant, over plaintiff's opposition, sought leave of this court to reopen the case for a further consideration of the question of validity in view of the scope of the coverage claimed and to obtain an adjudication of the alleged changed structures. Upon denial of that leave, it filed suit for a declaratory judgment in Ohio. Thereafter plaintiff filed its motion to punish defendant for contempt.[1]

We stated in our opinion on the original case that while the question of infringement was seriously controverted here, it appeared from the record that the principal question had been that of validity, and that defendant's expert witness had expressly admitted infringement of at least three of the claims in suit. The accused structure was a unitary one and, as such, we held that it infringed the prefabricated unit on which the patent was granted.

The modification in its structure upon which defendant relies to avoid infringement consists in the breaking down of this unitary structure and selling instead, the pipe and insulation for the system. According to the diagram furnished to the plaintiff, it ships the outer casing with the inner piping placed therein, braced with a pair of end supports, and the insulation which is furnished separately. Then at

1. The Ohio suit was subsequently dismissed by the court in the exercise of its discretion, for the reason that it appeared that it raised the same issues as were presented in this proceeding and that since this one was in the same court that had heard the original action, it was desirable to let that court settle those issues.

the job site, the end supports are removed and the insulation is inserted, after which the end supports are replaced, and the structure is ready for installation in the trench.

The District Court found as a fact from the evidence adduced that defendant had assembled units at the site of installation and, concluding as a matter of law that the place where it assembled the unit complained of was immaterial, it adjudged defendant guilty of contempt. In reaching this conclusion it appears to us that the court misunderstood our construction of the patent and considered that it was the *elements* of the structure upon which it was based, as indicated by its observation that the patent was composed of four parts which it named as the steel pipe, insulation, space for air, and outer shell—"and that is put down into this trench, and it is on that that the patent is based." We thought we had made it clear in our original opinion that the patent was not granted on these elements (all of which were old in the art) nor on the method of installing them, originally claimed by the applicant but denied by the Patent Office. Far from holding that the place of assembly was immaterial, we emphasized that the unit could be completed indoors and transported complete to the place of installation where it could be coupled quickly with other units, tested, and the trench filled in. While we did not in terms refer to the file-wrapper history which we have quoted from at length here, we were mindful of the patentee's emphasis on his invention of a complete unit, to be manufactured in a shop and sold "over the counter," needing only to be brought to the point of installation and connected with similar units to produce a complete heat insulated and drained conduit system. Since the patentee described that as his invention and formulated his claims accordingly, plaintiff may not now expand the scope of the patent to include a structure which is not a prefabricated unit, shipped complete, ready to install. Cf. Dixie Cup Co. v. Paper Container Mfg. Co., 7 Cir., 169 F.2d 645.

Although the District Court had incorporated in its original judgment a finding that the patent was of a pioneer character, we did not express any opinion as to that. However, by stating that the advance in the art was in the provision of a "unit which could be completed indoors, affording workers protection in all kinds of weather, * * * capable of being transported complete," we indicated our opinion that the essence of the patent lay in the production of this prefabricated unit as an article of manufacture, and that therein was the novelty which constituted patentable invention. We would not define this as a pioneer patent, entitled to a wide range of equivalents. See Exhibit Supply Co. v. Ace Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736. Hence, while ordinarily it is true that mere place of assembly is immaterial, and one cannot avoid infringement by merely disassembling—or rather, waiting to assemble the elements of a combination patent, we think that rule is not applicable where, as here, the patent was granted on the unit composed of those elements, manufactured and shipped as a completed unit.

It is clear from the record that what defendant now does is to sell and ship elements, capable of being put together at the site for the construction of a conduit system or, as plaintiff distinguished some of the earlier art, "a system which must be built up in the field." We think this is not, in the purview of the patent, "an article of manufacture" or "a conduit system * * * of units * * * handled and installed together * * *." Hence we are convinced that defendant's present practice of selling and shipping the materials for the building of the system, partially assembled, does not infringe the patent and violate the decree against such infringement. Cf. Cover v. Chicago Eye Shield Co., 7 Cir., 130 F.2d 25.

Many other questions have been raised by the parties on this appeal but since we are convinced from our inspection of the records in both appeals that the alterations made by defendant in its structures are suf-

ficient to avoid the charge of infringement, we deem it unnecessary to pass upon these questions.

Judgment reversed and the cause is remanded to the District Court with directions to deny the motion to punish for contempt.