**Esther M. KROMER and Edward L. Kromer, and Stayon Products, Inc., an Illinois corporation, Plaintiffs-Appellees,**

v.

**RIEGEL TEXTILE CORPORATION, a Delaware corporation, Defendant-Appellant.**

**No. 11445.**

United States Court of Appeals Seventh Circuit.

Dec. 5, 1955.

Rehearing Denied Jan. 13, 1956.

John F. Ryan, New York City, Thorley Von Holst, Chicago, Ill., Reginald Hicks, New York City (Thiess, Olson, Mecklenburger, von Holst & Coltman, Chicago, Ill., of counsel), for defendant-appellant.

James R. McKnight, Abraham W. Brussell, Chicago, Ill., for plaintiffs-appellees.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

MAJOR, Circuit Judge.

This is an action brought to recover damages and profits for unfair competition and for infringement of the single claim of patent No. 2,454,463, issued November 23, 1948, to plaintiffs Esther M. Kromer and her husband, Edward L. Kromer, the subject matter of which was a "Baby's Safety Sheet." Stayon Products, Inc., also a plaintiff, is a licensee of the patentees. Defendant Riegel Textile Corporation denied the charge of unfair competition, asserted invalidity of the patent in view of the prior art and non-infringement based upon file wrapper estoppel.

The District Court, after trial, found the patent valid and infringed but that the proof did not sustain the charge of unfair competition. Predicated thereon, the court entered its judgment against the defendant on the issue of validity and infringement but in its favor on the charge of unfair competition. Defendant appeals from that portion of the judgment unfavorable to it but there is no appeal by plaintiffs from the portion unfavorable to them.

Thus, the contested issues before this court involve only those relating to validity and infringement. We think the situation as it relates to both issues can best be shown by first considering that of infringement. The patentees in their application stated: "This invention relates to a sheet adapted to be so removably attached to a mattress as to defy accidental or undesired removal therefrom." The object of the invention was stated as follows: "Among the objects of our invention is to provide a sheet having pockets at all four corners so that the sheet may be anchored to a mattress and thus prevent the user from pulling the sheet away from the mattress. This is particularly important for infants because in their twisting, turning and pulling, they tend to pull the sheet away from the mattress, wad it up and become entangled therein, sometimes to their injury and death from strangulation. Our sheet is so constructed as to prevent the baby from so removing the sheet from the mattress."

Construction of the patented sheet was illustrated by drawings accompanying the application. They disclose a single piece of material, a body portion with side portions and end portions, with integral triangular extensions thereof. The drawings disclose that the spaced triangular extensions of the end portions have been folded down and their edges stitched to the upper edges of the opposite side portions, forming what is referred to as pockets on the four corners of the sheet adapted to removably engage a mattress. The patent illustrates and describes in detail, as does the claim in suit, a structure where the triangular portions which are to form the corner pocket are an integral part of the sheet.

While the drawings disclose a structure where the corner pockets are formed from the triangular portions which are an integral part of the sheet itself, it is pertinent to note that the specifications state: "It is also within the contemplation of our invention that triangular portion 23 instead of being an integral part of blank 11 may be separate pieces sewed together as heretofore set forth."

Thus, the specifications disclose two structures, (1) where the triangular portions are an extension of an integral part of the sheet, and (2) where the triangular portions may be separate pieces sewed together. As noted, the drawings disclose only the first described structure.

Two claims filed with the application were both directed to the structure in its broad aspect. They called merely for "extensions" on the end portions, without specifying whether those extensions were integral with the body of the sheet or were sewn onto it as separate pieces. In the first office action, the Examiner

cited four prior art patents, including Shauer No. 2,162,755, and rejected both claims on that reference. In doing so, the Examiner stated: "Claims 1 and 2 are rejected on the patent to Shauer as being fully met thereby. Attention is particularly directed to the triangular gussets in Figs. 4 and 5 of Shauer. Whether such gussets were cut in one piece integral with the bed sheet, or for the purpose of economy of material, or to use a stronger or more elastic material for same would be a matter of choice, and would not involve invention."

The Shauer patent on which the claim stood rejected is for a fitted bed sheet having triangular corner gussets in which the mattress is contained as appears in the patent and drawing. The gussets thus shown are not "integral" with the bed sheet but are of somewhat heavier material and are inserted in the corners of the sheet material.

Thereupon, the applicants filed amended claims 1 and 2. Claim 1 called only for " * * * a pair of spaced triangular extensions on said end portions * * *." This claim, like the two previous claims which had been rejected, did not specify whether these triangular portions were to be integral with the end portions of the sheet (in other words, cut as part of the body of the sheet), or whether they were to be cut separately and sewn to the body of the sheet. Claim 2, in contrast to claim 1, was amended to read as follows: "A baby's safety sheet comprising a rectangular body portion, a pair of opposite end portions and a pair of opposite side portions, said end portions spaced from said side portions, said side and said end portions both extending outwardly from said body portion for substantially the same distance, *a pair of integral spaced triangular extensions* extending outwardly beyond each of said end portions *in prolongation of the side edges of said end portions*, said side portions attached to adjacent end portions forming rectangular corner portions, said extensions folded inwardly and attached to adjacent side portions forming box like bottom anchoring portions, said rectangular corner portions and said box like anchoring portions forming pockets on the four corners of said sheet adapted to removably engage a mattress, and when in position on said mattress to prevent accidental removal by the baby therefrom." The italicized language represents the amendments made to this claim.

Claim 2 as amended was allowed. Claim 1 as amended was cancelled by the applicants. This action was taken after an oral interview between applicants' attorney and the Examiner. What was said or took place in that interview the record does not disclose. There is a strong inference, however, that the Examiner was persuaded to alter the position previously taken that it was immaterial whether the triangular portions or gussets were cut as an integral portion of the sheet or cut separately and sewn to the sheet. Otherwise, we discern no explanation for the cancellation of amended claim 1, or for the rejection of original claims 1 and 2, followed by the allowance of amended claim 2, which alone distinguished Shauer, by specifying that the triangular portions should be an integral part of the sheet.

Plaintiffs make much of what appears to be a fact, that the baby sheet manufactured by the corporate plaintiff was widely accepted by consumers and enjoyed great commercial success. The undisputed fact is, however, that plaintiffs have not at any time manufactured or sold a sheet made according to the requirements of the claim. Neither their sheet nor defendant's charged to infringe is made with triangular end portions integral with the sheet. Such portions are by both plaintiffs and defendant cut separately and sewed to the sheet. This is done in the interest of economy; material and labor costs are reduced.

■■ Thus, commercial success becomes insignificant because it was achieved as a result of plaintiffs' commercial sheet and not the sheet described in their claim, and by the same token,

plaintiffs' argument that defendant copied their sheet becomes immaterial. The issue of infringement must be appraised by comparing defendant's sheet with that described in the claim rather than by a comparison with plaintiffs' commercial product. It is true, as previously noted, that the specifications suggest that the triangular portions may be cut separately and sewed to the body of the sheet rather than cut so as to form an integral part thereof. The record indicates that the patentees at the time their application was filed had this twofold conception of their invention because they submitted to their attorney drawings illustrative of each conception. The specifications as originally filed were not changed. In the meantime, however, as we have shown, the "separate piece" conception was definitely rejected by the Examiner over Shauer, which rejection was acquiesced in by the applicants. Plaintiffs now contend that it makes no difference "whether the triangular portions are integral or sewn." Assuming the plausibility of that statement, the important point is that it did make a difference in the Patent Office; in fact, it represented the difference between rejection of the original claims and the allowance of the claim in suit.

In our view, it is a clear case for the application of the doctrine of file wrapper estoppel, which the District Court did not discuss or refer to. So far as the record discloses, the court in finding infringement compared defendant's sheet with the commercial sheet of plaintiffs rather than with the claim in suit. No good purpose could be served in an extensive discussion of the doctrine of file wrapper estoppel or the citation of the many cases where it has been considered and applied.

This court, in Dixie Cup Co. v. Paper Container Mfg. Co., 7 Cir., 169 F.2d 645, 648, speaking of file wrapper estoppel, stated:

"* * * a patentee who has changed the form of his claim during its prosecution disclaims the scope of the claim in its earlier form, and the change effected by the amendment must be construed against the patentee. He is not permitted thereafter to recapture what he has disclaimed or assert the claim against any equivalents that would respond to the claim in its earlier form but which do not respond expressly to the claim as issued."

In that case we cited and relied upon Exhibit Supply Co. v. Ace Patents Corporation, 315 U.S. 126, 136, 62 S.Ct. 513, 518, 86 L.Ed. 736, wherein the court stated:

"By the amendment he [the patentee] recognized and emphasized the difference between the two phrases and proclaimed his abandonment of all that is embraced in that difference. [Citing cases.] The difference which he thus disclaimed must be regarded as material, and since the amendment operates as a disclaimer of that difference it must be strictly construed against him. [Citing cases.]"

It is evident that the claim in suit does not read upon the construction utilized in defendant's sheet; for that matter, it does not read upon the construction embodied in plaintiffs' commercial sheet. In order to hold infringement it would be necessary to ignore an essential element of the claim, the insertion of which enabled plaintiffs to procure its allowance. It would also result in a resurrection of the claims rejected by the Examiner in view of the prior art.

On the issue of validity, a close question is presented. Defendant, in support of its contention that the patent is invalid for lack of invention over the prior art, cites in addition to Shauer a number of prior art patents, including Carswell No. 924,733, and Ellington No. 794,145. Reliance is also placed upon a mattress cover long manufactured and sold by Sears, Roebuck & Company. We think it sufficient to note, without analysis or discussion of the prior art thus

relied upon, that we have studied it and are not convinced, in the light of the presumption which attaches to the grant and the finding of validity by the District Court, that the patent is invalid.

The judgment on the issue of validity is affirmed, on the issue of infringement is reversed.