**R. Lee FRASER, Plaintiff,**

v.

**CONTINENTAL REALTY CORP., a corporation, et al., Defendants.**

**Civ. A. No. 3003 HN.**

United States District Court,
S. D. West Virginia,
Huntington Division.

Sept. 22, 1972.

James W. St. Clair, Huntington, W. Va., for plaintiff.

C. Robert Schaub, Huntington, W. Va., William Michael Hynes and Paul W. Vapnek, San Francisco, Cal., for defendants.

## MEMORANDUM ORDER

DENNIS RAYMON KNAPP, District Judge.

This action was instituted on June 16, 1972. In response to plaintiff's claim, the defendants filed their answer on July 18, 1972. On that same date, the defendants, Continental Realty Corp. and Oak Ridge Construction Company, filed a motion for summary judgment on the grounds that the plaintiff's patent is not infringed by the method of construction used for the accused structure, the Downtown Holiday Inn, currently under construction in Huntington, West Virginia. On August 24, 1972, the Court heard oral arguments of counsel, and the matter was then submitted to the Court on the record.

The facts, which are undisputed, may be summarized as follows: On July 12, 1966, the United States Patent Office issued Patent # 3,206,028 (hereinafter called "Fraser Patent") to the plaintiff. Plaintiff's application for said patent had included several claims. As stipulated by the parties at the hearing on this motion, Claim 1 of the Fraser patent is the sole claim in issue. Claim 1 of the patent is from Claim 2 of the patent application, Serial No. 296,661, filed July 22, 1963. For the sole purpose of disposing of the motion now under consideration, the validity of said patent is assumed.

The Fraser patent embraces a method of constructing a building by use of a cylindrical core, constructed in an upstanding relationship to the supporting ground, and around which the floors are constructed at ground level and then hoisted into position by means of a hoist attached between the core and the floors. The description of the central core in the patent includes the language: "a central, substantially large, single cylindrical core from the ground." The annular floors are described as having "central substantially circular openings through which said core extends."

Claim 2 of the patent application was originally rejected as being unpatentable over the method of German patent # 833,556. The German patent was considered to include the same basic design and the same active procedural steps, including construction of the floors adjacent to the ground. The said German patent, however, provided for a plurality of cores. Claim 2 of the patent application, the sole patent claim at issue in this suit, was then amended. The amendment inserted the phrase "Large, single" in the original description of Claim 2, so as to read "a central substantially *large, single* cylindrical core . . ." (inserted words emphasized).

A second distinguishing factor between the German patent and the Fraser patent is the type of core. The German patent described a series of small cores, with an opening through the center for the sole purpose of providing passage for the hoisting cable. Each floor is lifted individually by simultaneously pulling the plurality of cables attached to the floor. The single core described in the Fraser patent is substantially larger, with space for housing the elevators, stairs and various utility lines.

The accused structure, which plaintiff asserts has infringed his patent, is the new Downtown Holiday Inn currently under construction in Huntington, West Virginia. The defendant, Continental Realty Corp., is the owner-builder of the structure, and the defendant, Oak Ridge Construction Company, is the general contractor engaged in the construction of same. The accused structure has two cores, rectangular in shape and spaced apart. Each floor has two rectangular openings, which openings exceed the dimensions of the tower in order to permit movement of the floor in relation to the tower during any dynamic application of force to the building, such as might occur during an earthquake. The floors are constructed at ground floor, and each floor contains beams which extend longitudinally the entire length of the building. The floors are hoisted into position by means of cables attached to the core.

The defendants premise their motion for summary judgment upon two grounds: (1) that plaintiff has by his patent limited himself to a core substantially circular in nature, whereas the cores of the accused structure are rectangular in shape and (2) that plaintiff has by his patent limited himself to the use of a single core, whereas defendants' accused structure utilizes two cores.

The Court is fully cognizant of the general rule that summary judgments should be employed with great caution, especially in patent cases. However, where it is apparent that there is no genuine issue of fact bearing on alleged infringement, and the design and mode of operation of the accused device are such that they may be readily comprehended by the Court and compared with the invention described and claimed in the patent, without the aid of technical explanation and elaboration from sources of special knowledge in the field, then the Court, should, if satisfied that there is no infringement, award summary judgment for the defendant, rather than to subject the parties to the expenses of a trial. Steigleder v. Eberhard Faber Pencil Co., 176 F.2d 604 (1st Cir. 1949) cert. den. 338 U.S. 893, 70 S.Ct. 244, 94 L.Ed. 548.

The Court will direct its attention first to the defendant's claim that inasmuch as the cores of the accused structure are rectangular, they do

not infringe upon plaintiff's patent since it describes the core as being circular. With the contention of defendants that, since the accused structure utilizes two rectangular cores rather than one cylindrical core, as described in the patent, there can be no infringement, the Court is inclined to agree. The Court, although aware of its limitations in the technical field involved here, does perceive certain basic differences in the methods employed in the accused building and the claims of the patent. They have to do with basic design and engineering techniques. To be considered, however, on this issue, is the "doctrine of equivalents." This principle of law has evolved to protect the patentee from devices which differ merely in name, form or shape, and thereby to prevent an unauthorized person from reaping the benefits of another's inventive genius. Laitram Corporation v. Deepsouth Packing Co., 443 F.2d 928 (5th Cir. 1971). The first case to espouse this doctrine was the case of Winans v. Denmead, 15 How. 330, 14 L.Ed. 717. The patent involved covered an improvement in railroad cars for carrying coal and called for a circular form. The accused car utilized an octagonal body and a pyramidal bottom. The Court concluded that infringement was made out on the facts therein. However, the statute under which *Winans* was decided was not as artfully drawn or as specific in its requirements as the present statute. The former statute used the term "claim" but the *obligation was merely to* "specify and point out" as distinguished from the requirement of the present statute (35 U.S.C. § 112) of "particularly pointing out and distinctly claiming" the subject matter of the invention. Koykka, Infringement of Patents, 42 F.R.D. 43. The obvious purpose of the amended statute was to require the patentee to set out his claim with as much clarity and exactness as the language permits when procuring a patent, and thereby reduce the number of disputes giving rise to the doctrine and its application by the courts. The principle continues to be applied, however, and the Supreme Court in Graver Tank and Mfg. Co., Inc. v. Linde Aire Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950), recognized the "doctrine of equivalents" in reciting that an equivalent "performs substantially the same way to obtain the same result." Just how far the "doctrine of equivalents" may expand a patent claim is problematical at best. By its very nature it involves the intricacies of technical interpretations of the art at a given time, and of necessity depends upon the facts of a particular case. This means that objectivity is difficult when the opinions of experts in a given field of endeavor are clothed in subjectivity. Cold, practical analysis on this issue in so many cases is next to impossible.

The doctrine is, of course, based upon sound reasoning and has been at times applied in the interest of equity and fairness. To permit imitation of a patented invention simply because every literal detail thereof is not copied would be to convert the protection of the patent grant into a hollow and useless thing, subordinating substance to form. Galston, The Patent in Court Infringement, 11 F.R.D. 319, pg. 326.

While in the instant case, it would appear that the cores in the building being constructed by defendants accomplish the same purpose as the method comtemplated by the patent, and that there is utilized the same basic procedure as set out in plaintiff's patent, yet there are differences in the utility of the structure used by defendant as compared to the expressed claim of the patent and also in the engineering techniques involved in each. And whether the Court should, if this were the only controlling issue involved, grant summary judgment without supplementing the record, presents a close question which this Court would resolve in favor of the defendants. However, resolution of the motion need not rest upon this ground alone, for there is a more fundamental issue here involved, and one on which the law is clear and well settled. It is to

this issue that the Court will now address itself.

The second ground advanced by defendants in support of their motion is that the patent is not infringed because the plaintiff limited himself to a "large, single" core by amendment of his claim, and that inasmuch as the accused structure has two cores, plaintiff cannot complain. Defendant's argument is based upon the well known doctrine of "file wrapper estoppel."

■ Since the "doctrine of equivalents," if carried to the extreme, could undermine the entire patent system, it was necessary to find some balance between the "doctrine of equivalents" and the excessively formal alternative of holding the patentee to the exact wording of his claims. Laitram Corporation v. Deepsouth Packing Co., supra. The file wrapper is the Patent Office's file of papers relating to the patent, and contains all the papers which ultimately led to the grant of the patent. Secret and confidential until the issuance of a patent, thereafter it is opened to the public. Under the doctrine of file wrapper estoppel, it is settled law that if, in order to obtain his patent, the inventor restricts what he has claimed, he is thereafter bound by that surrender. This may be readily ascertained by an examination of the file wrapper. Moreover, recourse may not be had to the doctrine of equivalents to recapture that which has been surrendered by amendment. Exhibit Supply Co. v. Ace Corp., 315 U.S. 126, 62 S.Ct. 513, 86 L.Ed. 736 reh. den. 315 U.S. 828, 62 S.Ct. 792, 86 L.Ed. 1223. And, whether the examiners were right or wrong in their insistence on an amendment is immaterial. Having amended the claim to induce the granting of the patent, it may not thereafter be repudiated. Berry Brothers Corporation v. Sigmon, 317 F.2d 700 (4th Cir. 1963).

■ As hereinbefore indicated, Claim 2 of the application, which is Claim 1 of the Fraser patent, was originally rejected as unpatentable over the method of German patent # 833,556. Claim 2 of the patent application was then amended by an amendment received in the Patent Office on November 23, 1964. This amendment inserted, among other words, the phrase "large, single" in the language "a central substantially large, single, cylindrical core. . . ." Argument was then made for patentability because the claim was thereby made distinguishable from the German patent which purportedly did not disclose a single core for housing various parts of the building, nor did it include a method for supporting a plurality of floors from a single core. The German patent indicated a multiple of small cores, each housing only the hoisting cable. Upon the basis of the representation of the plaintiff, as contained in the amendment, he himself proposed, the protection afforded Fraser by the patent in issue extends only to structures which utilize a single core. The accused structure, currently under construction, does not include a single core supporting the entire building. Rather, it contains two cores, spaced apart, and thereby non-centrally located and substantially large in size. The floors, as constructed, contain steel beams which run the entire length of the floor, necessitating the simultaneous lifting of each floor by each core.

■ It is readily apparent that the plaintiff limited structures utilizing his method of construction to single cores. Having done so, he cannot now complain of the use of a plurality of cores. Plaintiff's claim, as allowed, must be read and interpreted with reference to the rejected one, and to the state of the prior art; and that claim which has been narrowed in order to obtain issuance of a patent by distinguishing the prior art, cannot be sustained to cover that which was previously by limitation eliminated from the patent. Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545. Accordingly, the Court is convinced that, as a matter of law, plaintiff cannot establish infringement for the reason that by his own action he

has limited himself to structures which contain but one "large, single core," and that limitation is not present in the accused structure.

In accordance with the views hereinbefore expressed, defendants' motion will be sustained and judgment entered for the defendants, and it is so Ordered.

It is further Ordered, with the consent of defendants, that the counterclaims of defendants relating to the invalidity of the subject patent are dismissed without prejudice to said defendants as to any action now pending or to be reinstituted in any proper form.

It is to be noted that motions are pending by the other defendants herein raising questions as to the jurisdiction of the Court as to them. In view of the action of the Court hereinbefore contained, however, these questions are rendered moot.