**COULTER ELECTRONICS, INC., Plaintiff,**

v.

**J. T. BAKER CHEMICAL COMPANY, Ipco Hospital Supply Corporation, and the Rupp and Bowman Company, Defendants.**

**No. 77 C 1941.**

United States District Court, N. D. Illinois, E. D.

April 8, 1980.

Myron C. Cass, Herbert J. Singer, I. Irving Silverman, Silverman & Cass, Chicago, Ill., for plaintiff.

Warren D. McPhee, Joseph Krieger, Richard H. Anderson, Mason, Kolehmainen, Rathburn & Wyss, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

This patent infringement suit comes before the court on defendant J. T. Baker Chemical Company's motion for partial summary judgment pursuant to Rule 56, Fed.R.Civ.P.

Defendant contends that the doctrine of file wrapper estoppel requires this court to find that defendant's Product No. 11,630, "Diluid Azide-Free" does not infringe plaintiff's Patent No. 3,962,125.

The sole patent at issue is the Armstrong Patent, No. 3,962,125 issued on June 8, 1976 and assigned to plaintiff. It has nine claims, all directed to a blood diluent composition used in electronic instruments for enumerating red and white blood cells and determining hemoglobin concentration in blood samples.

Prior to the development of the claimed invention, plaintiff manufactured and sold a diluent utilizing sodium azide as a bactericide. Sodium azide is toxic and diluents containing it endanger laboratory personnel. Plaintiff modified their prior diluent formula by eliminating the sodium azide and substituting 2-phenoxyethanol as the bactericide.

The original patent application claimed the invention of, *inter alia* :

A multi-purpose diluent for diluting a blood sample to be analyzed for a plurality of classic parameters in an electronic particle analysis apparatus of the Coulter type comprising:

 (a) an osmotically balanced solution of metal halides and metallic phosphates,

 (b) sodium flouride,

 (c) a preservative [the bactericide],

 (d) a chelating agent,

said diluent being an aqueous electrolytic solution maintained at a pH of between 7.0 to 8.0 and at an osmolality of between 300 and 380 milliosmoles.

All of the other claims in the original application are dependent on the above-quoted claim. All claims were initially rejected by the Patent Office. According to the examiner, 35 U.S.C. § 112 required rejection of the above-quoted claim because the examiner concluded that the claim was "broader than the enabling disclosure in the recitation of the enormously broad terms, 'metal halides', 'metal phosphates' and chelating agent.'" File Wrapper, p. 17.

As a result of the rejection of the original claims, plaintiff filed an amendment which narrowed certain elements of the claims. At issue in this motion is an amendment which substituted for the term "metallic phosphates", two specific metallic phosphates: sodium di-hydrogen phosphate and di-sodium phosphate.

Defendant concedes that potassium di-hydrogen phosphate has long been known to be equivalent to and interchangeable with the sodium di-hydrogen phosphate used in the patent. Defendant also admits that in all other respects the two products are identical. For the purposes of this motion, defendant admits infringement of the patent if this court finds that the doctrine of

equivalents applies to this case. In the patent office action after the application was filed, the Patent Examiner rejected claim 1 as "broader than the enabling disclosure in the recitation of the enormously broad terms 'metal halides' and 'metallic phosphates.'" The Patent Examiner cited 35 U.S.C. § 112 as authority for this rejection.[1] According to the defendant, since the applicant substituted two specific "metallic phosphates" after rejection by the patent office, all other metallic phosphates including potassium di-hydrogen phosphate were surrendered to the public and the plaintiff is estopped from claiming them as a part of his invention. We do not think that this contention is fairly supported by the case law relied on by the defendant.

*Schriber-Shroth Co. v. Cleveland Trust Co.*, 311 U.S. 211, 61 S.Ct. 235, 85 L.Ed. 132 (1940) involved the operation of file wrapper estoppel. After an interference proceeding the applicant had amended his claim to drop that element of the claim necessary to sustain a finding that the combination was a patentable invention. In that case the amended claim did not include the specific element which in combination with prior art would have lent novelty to the claimed invention. The court found that having dropped that element the claim could not be construed to include it in order to find it a valid combination. The court was not there concerned with preclusion of the doctrine of equivalents, since no claim was made that the surrendered element was equivalent to any element remaining in the claim after amendment and defendant's reliance on this case is therefore misplaced.

*McClain v. Ortmayer*, 141 U.S. 419, 12 S.Ct. 76, 35 L.Ed. 800 (1891) is also relied on by defendant but this case involved neither file wrapper estoppel nor the doctrine equivalents. The case was concerned with construction of the patent claim in light of the specification and the statutory requirement of invention.

The defendant also relies on *Graham v. John Deere Co.*, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). In that case the Supreme Court stated:

> [A] claim as allowed must be read and interpreted with reference to rejected ones and to the state of prior art; and claims that have been narrowed in order to obtain the issuance of a patent *by distinguishing prior art* cannot be sustained to cover that which was previously by limitation eliminated from the patent. (emphasis added)

The above-quoted language does not support defendant's contention that file wrapper estoppel applies after an amendment prompted by rejection based on the overbreadth or indefiniteness of a claim. *See also, Exhibit Supply Co. v. Ace Patents Corp.*, 315 U.S. 126 at 136, 62 S.Ct. 513 at 518, 86 L.Ed. 736 (1948) (file wrapper estoppel applies to amendments after rejection of claim based on prior art).

Other circuits have limited the operation of file wrapper estoppel in cases other than those in which an amendment was required because of a Patent Office rejection based on prior art. *Nationwide Chemical Corp. v. Wright*, 584 F.2d 714, 719 (5th Cir. 1978); *Ziegler v. Phillips Petroleum Co.*, 483 F.2d 858, 877 (5th Cir. 1973), *cert. denied*, 414 U.S. 1079, 94 S.Ct. 597, 38 L.Ed.2d 485 (1973) (no file wrapper estoppel arises where the limitation in the claim was not inserted to overcome any prior art but was inserted to overcome Examiner's objection that the original claim was too broad and based on insufficient disclosure; *Eimco Corp. v. Peterson Filters and Engineering Co.*, 406 F.2d 431, 438 (10th Cir. 1968); *McCullough Tool Co. v. Well Surveys, Inc.*, 343 F.2d 381 (10th Cir. 1965); *Sears Roebuck & Co. v. Jones*, 308 F.2d 705, 708–09 (10th Cir. 1962).

---

1. The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.

In *Trio Process Corp. v. L. Goldstein's Sons, Inc.*, 461 F.2d 66 (3d Cir. 1972), the court set forth the rationale of holdings limiting the operation of file wrapper estoppel to amendments after rejection based on prior art:

> The doctrine [of file wrapper estoppel] is based on the theory that the prior art is either in the public domain or already patented, so that the patentee may not claim it as part of his invention. By redrafting or abandoning a claim in the face of a prior art rejection, the patentee is conceding that he has not invented what he thereby disclaims, and therefore will not be heard to assert, at a later date what he disclaimed as his invention. Accordingly, for "file wrapper estoppel" to become operable, it is necessary, at the least, that a claim has been narrowed to avoid prior art. . . .

The Seventh Circuit also has indicated that file wrapper estoppel applies only to amendments required by rejection based on prior art. In *Ellipse Corporation v. Ford Motor Co.*, 452 F.2d 163 (7th Cir. 1971), the court stated:

> The application of the doctrine is limited to changes made to overcome rejections by the Patent Office because the claim was anticipated by the prior art. . . . It will not apply where changes in the claim are directed to merely overcoming difficulties in particular wording or indefiniteness . . . . .

This court agrees with the plaintiff that the substitution of the sodium di-hydrogen phosphate and di-sodium phosphate for the "enormously broad term" metallic phosphates after a rejection based on § 112 does not evidence an intent to abandon the invention as to metallic phosphates well known to be equivalent to and a substitute for the two specific phosphates mentioned. As the defendant itself points out over 70 compounds fall within the term "metallic phosphates" contained in the original claim. An amendment specifying two metallic phosphates well known to be an effective buffering agent in prior diluents cannot fairly be construed as anything more than a recognition by the plaintiff that not all metallic phosphates would function in the combination claimed. *See Ortho Pharmaceutical Corp. v. American Hospital Supply Corp.*, 534 F.2d 89, 94 (7th Cir. 1976). The claim was thus limited to two metallic phosphates known to be effective in blood diluents utilizing a Coulter type electronic blood analyzer. The doctrine of equivalents should not be foreclosed by this amendment. As the court in *Ziegler* stated:

> The mere surrender or amendment of a claim in the Patent Office does not forever ban a patentee from asserting the doctrine of equivalents. He is estopped from claiming only what he surrendered.

483 F.2d at 870.

In the present case the plaintiff's amendment was not required in order to avoid prior art and was concerned with an element of his claim that had nothing to do with the patentability of the invention. On the admitted facts and after a careful review of the file wrapper, the court does not believe that the file wrapper could fairly be read to limit the applicability of the doctrine of equivalents.

Finally, we reject defendant's contention that the doctrine of equivalents is unavailable to plaintiff even without a file wrapper estoppel because the patent in suit deals with a chemical composition. *Ziegler v. Phillips Petroleum Co., supra* at 869.

Accordingly, defendant's motion for partial summary judgment is denied.

IT IS SO ORDERED.