NO-JOINT CONCRETE PIPE CO., a Corporation, Appellant,

v.

R. A. HANSON, an Individual, R. A. Hanson Co., Inc., a Corporation, Appellees.

No. 19403.

United States Court of Appeals Ninth Circuit.

Feb. 11, 1965.

Rehearing Denied May 10, 1965.

14

Oscar A. Mellin, Jack E. Hursh, Mellin, Hanscom & Hursh, San Francisco, Cal., for appellant.

Greek Wells, Richard J. St. John, Wells & St. John, John D. MacGillivray, MacGillivray, Jones, Clarke & Schiffner, Spokane, Wash., for appellees.

Before MERRILL, DUNIWAY and ELY, Circuit Judges.

MERRILL, Circuit Judge.

Appellant has brought this suit for infringement of patent.[1] Appellees defended upon the grounds, first, that appellant's patent was invalid for lack of invention, and, second, that there was no infringement. The District Court for the Eastern District of Washington, Northern Division, held the patent to be valid but not infringed. Appellees challenge the first holding. Appellant appeals from the second.

■ The device in question is for the forming of concrete pipe in place for use in irrigation and drainage systems. By means of the device pipe is formed by the following method: A ditch is dug, conforming to the outer dimensions of the pipe. Concrete is fed into the ditch around an inner core or form which is removed after the concrete has set. This method, in general, is not new in the art. What is new is the fact that the device permits a continuous operation. New pipe is continuously poured while the already formed pipe, is still hardening. Thus it is not necessary to permit one section of the pipe to harden before passing on to the pouring of a new section. Also, the top, bottom and sides of the pipe are formed simultaneously. This is accomplished by pouring concrete through a hopper around a conduit through which overlapping sections of the inner core are continuously fed, with the entire device resting on the bed of the ditch and steadily advancing along the ditch by means of a powered winch.

The District Court has found that although it is a combination of old elements, this patent is valid "because it has a new modus operandi which produces an improved result in a more facile, economic and efficient way." This finding is not clearly erroneous. We conclude that the District Court was not in error in ruling appellant's patent to be valid, and

1. Tunsen patent No. 2,731,698 issued January 24, 1956. Claim 1, which represents the claims in issue, reads:
"An apparatus for producing cementitious conduits in a trench or ditch,
"1. comprising an upright movable barrier having a configuration substantially conforming to the cross sectional configuration of the ditch in which the conduit is to be formed and adapted to be moved along the ditch with its plane arranged normal to the longitudinal axis of the ditch,
"2. an inner form comprising a lower movable member secured to the barrier inwardly of the bottom and sides thereof and extending rearwardly from the barrier and defining a space with the bottom of said ditch,
"2a. said form including an upper member composed of a plurality of sections releasably se-

cured together, disposed in overlapping slidable relationship with respect to the lower movable member and extending through the barrier in slidable sealing engagement therewith,
"3. an outer form member secured to the barrier and defining a space with respect to said upper member,
"3a. said outer form member having an opening therein communicating with the space between the inner form and the outer form member and between the inner form and the bottom of the ditch for the introduction of settable material,
"4. and means for moving said barrier longitudinally of the ditch and with respect to said upper member."

direct our attention to the question of infringement.

The accused device adopts appellant's method, which, the record makes clear, was a decided advance, enthusiastically embraced by the public.

There is, however, one difference in the details of the competing devices around which the issues here revolve. This relates to the inner form or core, which is fed through the conduit. In the patented device the core is in two pieces. The upper portion is fed through the conduit in overlapping sections and remains stationary, supporting the upper portion of the pipe until the concrete has hardened. It stays behind (as the device moves forward along the ditch) and is removed later. The lower portion of the inner core is attached to the device and moves with it, leaving exposed the lower portion of the pipe.

In the method adopted by the accused device a one-piece, full-circle inner core is fed through the conduit in overlapping sections and in its entirety remains behind, stationary in the pipe, until the concrete has set.

Upon the appeal the sole question is presented by appellant's contention that appellees' one-piece inner core is the mechanical equivalent of appellant's two-piece core. The District Court has ruled that it was not.

■■ In this we feel that the District Court has erred. Both cores accomplish precisely the same function of providing the inner form for the pipe. Both, in the words of appellant's Claim 1, are composed of "a plurality of sections releasably secured together * * * and extending through the barrier [i. e., fed through what we have termed the "conduit"] in slidable, sealing engagement

therewith." Thus both permit of a continuous operation by virtue of their composition and the manner in which they are introduced into the ditch. A substantial body of law recognizes that infringement is not avoided by making into one part that which has been shown as two.[2]

Appellees contend that the cores accomplish an important secondary purpose, and do so in different ways, and that this prevents the doctrine of equivalents from applying. Appellees refer to the manner in which the bottom of the pipe is formed. The problem here is that of assuring that the concrete has fully reached and compacted below the inner core. The patented device accomplishes this by a removable vibrator and tampers. Also, however, it is apparent that the movable lower inner core does, in its motion over the concrete, accomplish a compacting, spreading and trowelling of the bottom of the pipe against the underlying ditch. This trowelling action is absent in the accused device, which operates by means of mechanically activated "consolidating rings" upon which appellees have secured a patent. Appellees also point out that each form of inner core has its advantages over the other.

But it is not the form of inner core (whether one or two pieces—whether wholly stationary until setting has occurred or only partially stationary) which accomplishes any different result. The function of the core is simply to serve as a form around which the concrete is compacted or consolidated. That which accomplishes a different result is the means chosen in collaboration with the inner core for compacting or consolidating the concrete forming the bottom of the pipe. That appellees may have found

2. Industrial Instrument Corp. v. Foxboro Co., 307 F.2d 783, 786 (5 Cir. 1962), modified, 310 F.2d 686 (1962); Zysset v. Popeil Bros. Inc., 276 F.2d 354, 357–358 (7 Cir. 1960), cert. denied, 364 U.S. 826, 81 S.Ct. 62, 5 L.Ed.2d 54 (1960); Specialty Equip. & Mach. Corp. v. Zell Motor Car Co., 193 F.2d 515, 518 (4 Cir. 1952); Royal Typewriter Co. v. Remington Rand, Inc., 168 F.2d 691, 693 (2 Cir. 1948) (L. Hand, J.); cert. denied Remington Rand, Inc. v. Royal Typewriter Co., 335 U.S. 825, 69 S.Ct. 50, 93 L.Ed. 379 (1948); Apex Elec. Mfg. Co. v. Maytag Co., 122 F.2d 182, 187 (7 Cir. 1941), cert. denied, 314 U.S. 687, 62 S.Ct. 297, 86 L.Ed. 549 (1941).

and patented an improved method of compacting concrete around the core does not preclude their one-piece core from being the mechanical equivalent of appellant's two-piece core.

Nor does the fact that each core has its advantages over the other per se prevent application of the doctrine of equivalents in every case. Whenever equivalents present themselves a choice is presented and every choice presumably is governed by the chooser's view as to what is preferable or advantageous. Here the respective advantages were not of such dimensions as to amount to the accomplishment of different results.[3]

Appellees' contentions would have the effect of limiting the scope of appellant's invention to the manner chosen for compacting the concrete. The claimed combination encompasses a far greater area of novelty and invention than that.

Appellees contend that file-wrapper estoppel precludes appellant from asserting the doctrine of equivalents as to the form of inner core and limits appellant's claim to the precise inner core specified. The District Court so held. In this respect, too, we feel that the District Court was in error.

The application for the Tunsen (appellant's) patent originally included broad method claims[4] and apparatus claims[5] which were rejected by the Patent Office as being so broad as to encompass prior art. Specifically, the examiner at this point was concerned with a prior Ransome patent which disclosed a method of in-place pouring of concrete pipe. The Ransome method was not continuous. The bottom was poured first and then the top, or cap. One section had to set before the apparatus could be moved on to a new section. Tunsen's original claims were stated so broadly as to encompass this intermittent method.

Certain of these claims were then withdrawn by Tunsen. One of the original claims was amended to specify *simultaneous* motion of the upper outer form and lower inner form. It is the remarks of Tunsen in support of this amendment upon which appellees principally rely in their contentions of estoppel.[6]

The examiner was not persuaded. In the next action which he took *all* claims were rejected for lack of invention over other Ransome patents. Tunsen started all over again, confining his claims to apparatus claims. One statement made

---

3. The two-piece core had the advantages of trowelling the bottom portion of pipe and of leaving it briefly exposed to view so that the condition of its formation was continuously unfolded as the device moved forward along the ditch. The one-piece core provided continuing inner support and cover for the bottom of the pipe until it had set, which was of advantage in case the ditch was wet or exposed to water.

4. Original Claim 1 read:
"The method of producing a conduit, which comprises forming a ditch with a bottom conforming to the shape of the finished conduit, placing an inner form in said ditch spaced from said bottom, depositing cementitious material around said inner form and upon said bottom, and removing said inner form after said cementitious material has become form sustaining."

5. Original Claim 8 read:
"In apparatus for producing cementitious conduits in a ditch provided in the ground: an inner form; means for hold-

ing said form in spaced relation to the walls of the ditch; and means for moving at least a portion of said form longitudinally of the ditch while cementitious material is being deposited around said form."

6. "Claim 5 has been amended to call for an operational step wherein there is a simultaneous moving of the lower section and outer form. Clearly such an operation is not possible with the Ransome disclosure. In order for such an operation to take place, the core must also be moving, yet Ransome clearly requires the core to remain stationary while the invert and cap sufficiently harden to be form-sustaining. Further, it should be noted that Ransome requires that the core be collapsed before moving it forward, thereby allowing free movement of the core out of the hardened conduit. Claims 9 and 10 have been amended to include means for simultaneously moving said outer form and lower section of the inner form. Such means are not suggested by Ransome."

by Tunsen in his remarks in support of these claims is singled out by appellees: "All of the claims bring out the idea of a barrier moving along a ditch and carrying an outer form and part of the inner form, the other part of the inner form being temporarily left in place in the formed conduit. The stationary parts of the inner form slidably extend through the barrier and over the movable parts of the inner form carried by the barrier."

In specific relation to Ransome, however, the remarks state:

"Ransome * * * [shows] an apparatus for first forming the bottom of the conduit, and then subsequently forming the sides and then subsequently forming the top. It is true that Ransome—517,808 does show the idea of temporarily leaving part of the inner form in the conduit, but that is the extent of the similarity to applicant's invention. Ransome—517,808 cannot form the top, bottom and sides of a conduit simultaneously, but must form them in sequence and as a result of this the apparatus is complicated and expensive. Applicant's construction is first much simpler and less expensive than Ransome's, and besides it permits the simul-

taneous formation of the top, bottom and sides of the conduit to obtain a sounder conduit in that, for instance, dirt cannot fall on exposed partially formed side walls as is the case in Ransome."

Clearly, the provision for a movable lower inner form was not included for the purpose of escaping Ransome, nor relied upon at this point as differentiation. Indeed, Tunsen felt called upon to justify the fact that Ransome also left "part of the inner form" in the pipe. What Tunsen did rely upon was the fact that Ransome did not permit the simultaneous pouring of a complete pipe.

The examiner still was not persuaded. All claims again were rejected "as unpatentable over Ransome * * * in view of Boyle and Carr." Further, the examiner stated, "Applicant states that Ransome cannot form the top, bottom and sides of the conduit simultaneously, but he fails to state why and he fails to point out any statement in the Ransome patent indicating that the parts of the conduit must be formed in sequence."

In response to this action Tunsen adhered to his claims (subject to certain minor amendments to meet the examiner's further charge of indefiniteness and "informality"). In his remarks [7] he emphasized and reiterated that the ad-

7. "Claims 22 to 26 and 29 to 31 were rejected as being unpatentable over Ransome 517,808 in view of Boyle and Carr. Inasmuch as none of these patents provides apparatus capable of producing a complete pipe in a continuous fashion, it is believed that their combination would likewise fail to provide such an apparatus. In the case of the Ransome patent, there is insufficient disclosure regarding the form structure to ascertain just how the appartus operates. This particular patent is devoted to the formation of a helical reinforcing material. By reference to an earlier patent to the same inventor, 353,500, the manner of molding the pipe itself becomes clear. In this earlier patent it appears that the concrete is laid up by hand or otherwise formed on the sides of the ditch to a shape approximating that of the mold and to a length equal to or shorter than the mold. There is no disclosure of the underlying thought in these Ransome

patents of continuously forming a complete pipe nor of apparatus capable of doing so. Similarly, there are two pieces of apparatus in the Carr patent sequentially employed to form the lower portion of the pipe and then the upper portion. There is no apparatus in this patent that would possibly produce a complete pipe continuously. Similarly, in Boyle the operation is necessarily intermittent since there is no way to move an outer mold relative to an inner mold nor to add sections to an inner mold as is contemplated in the present application.

"It is quite probable that by removing the informalities to which the Examiner in the last Official Action, the grounds of rejection predicated upon these patents will have been overcome.

"Upon careful consideration of the claims as now presented, it is believed that the Examiner will be justified in passing the application for issue. Such action is requested at an early date."

vance over Ransome, Boyle and Carr was in "continuously forming a complete pipe" and pointed out how the cited prior art failed to accomplish this result.

The claims in issue were then allowed.

From these facts it is apparent that the narrowing and redefinition of his claims by Tunsen in order to escape cited prior art did not relate to a movable lower inner form. This movable portion had been claimed from the outset. (See original Claim 8, footnote 5, supra.) The redefinition was for the purpose of limiting the claimed apparatus to one which would continuously form a complete pipe. In our judgment the doctrine of file-wrapper estoppel is not applicable upon these facts. International Mfg. Co. v. Landon, 336 F.2d 723, 727 (9 Cir. 1964); cf., M. O. S. Corp. v. John I. Haas Co. Inc., 332 F.2d 910 (9 Cir. 1964).

We conclude that the doctrine of equivalents applies to the facts of this case and that appellees' device is in infringement of appellant's valid patent.

Judgment reversed.